UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JESSICA CHARTIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN AMBULANCE, INC., and | ) |
| FALCK USA, INC. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff complains against Defendants American Ambulance, Inc. and Falck USA, Inc. (collectively "Defendants") as follows:

## SUMMARY OF THE ACTION

1. Plaintiff Jessica Chartier is an Emergency Medical Technician (EMT) who worked for Defendants between July 20, 2018 and her involuntary termination on August 24, 2018. During her employment, Plaintiff's supervisor Dave Champagne sexually harassed her, sexually assaulted her, and unlawfully retaliated against her by terminating her employment when she rejected his sexual advances. Plaintiff alleges sex discrimination, sexual harassment/hostile work environment, and retaliation under the Maine Human Rights Act, 5 M.R.S. §§ 4572 and 4633 ("MHRA"), Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Maine Whistleblowers' Protection Act, 26 M.R.S. § 833 ("MWPA").

1

## PARTIES

2.     Plaintiff Jessica Chartier is a resident of Litchfield, Maine.

3.     Defendant American Ambulance, Inc. was, at all times relevant to this action, a Massachusetts corporation authorized to do business in the State of Maine.

4.     Defendant Falck USA, Inc. is a Delaware corporation, and was the parent company of American Ambulance, Inc. at all times relevant to this action.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. §§ 1331 as the allegations raise questions of federal law.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332, as Defendants are not citizens of the State of Maine, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees and costs.

6.     Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Maine. Under Local Rule 3(b), this action is properly filed in Portland because the events at issue occurred in Cumberland County.

7.     Plaintiff has exhausted all necessary administrative remedies and otherwise met all conditions before commencing suit on this matter.

On April 6, 2020, the Maine Human Rights Commission issued Plaintiff a so-called "Notice of Right to Sue" letter per 5 M.R.S. §§ 4612, 4622.

## JURY TRIAL DEMAND

8. Plaintiff demands trial by jury on all issues triable to a jury.

## FACTUAL ALLEGATIONS

9. Plaintiff first applied for employment as an EMT with American Ambulance in December of 2017.

10. In May of 2018, Plaintiff saw a former co-worker, who, at that time, was employed by Defendant. During the encounter, Plaintiff's former co-worker introduced her to American Ambulance supervisor Dave Champagne, who managed Defendants' operations in Scarborough, Maine.

11. Plaintiff told Champagne that she had already applied for a position with Defendants, but that she had not heard anything back. Mr. Champagne told her he would follow up with human resources and get back to her regarding her application.

12. On June 6, 2018, Defendant's Human Resources representative contacted Plaintiff regarding her application and employment orientation.

13. Defendants hired Plaintiff as an EMT on July 20, 2018. Dave Champagne served as Plaintiff's supervisor.

14. Plaintiff met or exceeded her employer's performance expectations at all material times.

15. Between her initial meeting with Champagne in May 2018 and her date of hire on July 20, 2018, Plaintiff and Champagne engaged in consensual flirtations through text message and Facebook.

16. Prior to the confirmation of her employment, though, Plaintiff tried to meet with Champagne to end their online flirtation. Plaintiff was concerned that it would be unprofessional and inappropriate to continue their personal Facebook and text message relationship if she was hired by Defendant, especially because Champagne would be her supervisor.

17. On one occasion, shortly before Plaintiff's date of hire, Champagne grabbed Plaintiff and began kissing her. Plaintiff did not consent to this contact, and felt that Champagne had exceeded the boundaries with which she was comfortable. She decided at that point to end all personal communications with Champagne.

18. Plaintiff and Champagne then had a discussion regarding her concerns about their personal relationship. Champagne appeared to understand Plaintiff's position, and assured her that he wanted to succeed in her employment with Defendant without unnecessary complications. Plaintiff felt that Champagne understood the boundaries that Plaintiff had set: no sexual communications or contact.

19. In the first week of her employment with Defendant, Champagne grabbed Plaintiff in the workplace and started kissing her. Plaintiff strongly protested and told him that he could not do that.

Champagne then pulled Plaintiff into a nearby office and exposed his erect penis to Plaintiff.  Champagne grabbed Plaintiff's hand and forced her to stroke it.  He then forced his hand down Plaintiff's pants and touched her genitals with his fingers.

20.     Plaintiff told Champagne "NO!" and made him stop.  She then left the station in extreme distress.

21.     Plaintiff returned for her next shift following the assault.  She was in desperate need of the job, and had great passion for her work.  Plaintiff did not report the assault to American Ambulance because she was new to her job and was concerned that no one would believe her if she made a report about the station supervisor.  She feared that it would jeopardize her own employment.

22.     Shortly after the assault and Plaintiff's rejection of Champagne's aggressive advances, Champagne became hyper-critical of Plaintiff's performance.  He fabricated opportunities to verbally reprimand Plaintiff, and began secretly soliciting Plaintiff's co-workers to write negative statements about Plaintiff's job performance.

23.     On August 7, 2018, Champagne returned from a brief vacation.  Shortly thereafter, Plaintiff discovered that several of her text messages with Champagne had been deleted from her phone.  It became clear to Plaintiff that Champagne was retaliating against her for rejecting

his sexual advances and that he was attempting to destroy evidence of his misconduct.

24.  On August 24, 2018, Champagne called Plaintiff into his office. An EMT named John, from Defendant's Somersworth, New Hampshire station, was present. Champagne introduced him as a manager. Champagne then presented Plaintiff with a notice of termination, purportedly signed by Defendant's New England Managing Director.

25.  Immediately following the meeting, Plaintiff pulled John aside and told him that Champagne was retaliating against her for rejecting his sexual advances. John told her that he was not actually a manager. He stated that he was an EMT, and that she should report her concern to Human Resources.

26.  Plaintiff immediately contacted Sandee Buckley, Defendant's Human Resources manager, and requested an urgent meeting. Plaintiff offered to drive to Massachusetts to meet Buckley.

27.  During their meeting, Buckley kept insisting that the sexual assault happened *prior* to Plaintiff's employment with Defendants. She also attempted to characterize the assault as entirely consensual.

28.  Plaintiff was adamant that the assault was not consensual, and that she had ended any romantic communications with Champagne prior to starting her employment with Defendant.

29. Ms. Buckley conducted a sham "investigation" in which she spoke to Champagne and some of the employees he had earlier pressured to write statements against Plaintiff. Importantly, Champagne was not placed on leave during the "investigation," and was still supervising all of the employees while they were interviewed.

30. During Ms. Buckley's interview with Champagne on August 27, 2018, Champagne admitted that the incident in which he assaulted Plaintiff occurred *during* Plaintiff's employment, though he falsely claimed it was consensual.

31. On August 31, 2018, Ms. Buckley sent Plaintiff a final decision regarding her reports about Champagne and her objection to her termination. The letter acknowledged that Champagne engaged in inappropriate conduct. However, Ms. Buckley claimed that, despite Champagne's misconduct, she found no evidence that Plaintiff's "personal relationship" with Champagne was a factor in the termination decision.

## COUNT I
### (Sex Discrimination, Sexual Harassment, Hostile Work Environment, and Retaliation in violation of MHRA and Title VII)

32. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-31 of this Complaint.

33. Plaintiff was subjected to unwelcome harassment and physical sexual contact by her male supervisor based upon her sex. Defendants discriminated against Plaintiff with respect to the terms,

7

conditions or privileges of her employment; unlawfully retaliated against her because she opposed discrimination and harassment; interfered, coerced, intimidated, or threatened Plaintiff while she exercised her rights to be free from discrimination or harassment; subjected her to a hostile work environment severe and pervasive enough to alter her working conditions; and unlawfully terminated her employment.

34. Defendants, by and through Mr. Champagne, engaged in unlawful sex discrimination by treating Plaintiff in disrespectful and demeaning ways, treating her differently than it would treat similarly situated male employees, failing to properly intervene or investigate on her behalf, failing to properly train and supervise her superiors and/or human resources, failing to adhere to policies regarding supervision and discipline of Plaintiff, and terminating her employment based on her sex.

35. Defendants, by and through Mr. Champagne, permitted a hostile work environment based on Plaintiff's sex, and is strictly and vicariously liable for the sever, pervasive, and offensive harassment conducted by its supervisory employees because such harassment not only affected the terms and conditions of Plaintiff's employment, but also culminated in Plaintiff's termination from her employment.

36. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from August 24, 2018, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which plaintiff may be entitled.

## COUNT II
### (Whistleblower Retaliation – MWPA)

37. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-35 of this Complaint.

38. Plaintiff engaged in protected activity under the MWPA, to wit: Plaintiff rejected and opposed her supervisor's verbal and physical sexual harassment and assault, which she reasonably believed to be unlawful. Plaintiff also reported her supervisor's unlawful conduct to Defendants' human resources representative, and opposed the representative's efforts to minimize and cover-up her reports.

39. Defendants terminated Plaintiff's employment mere weeks after she opposed her supervisor's unlawful conduct.

40. As set forth above, Defendants retaliated against Plaintiff because of, or in response to, her opposition to her supervisor's sexual harassment and sexual assault, and her opposition to Defendants' efforts to cover-up her reports.

9

41. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MWPA:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from August 24, 2018, with prejudgment interest;
    C. Compensatory damages;
    D. Punitive damages;
    E. An award of reasonable attorney's fees and all costs; and
    F. All other damages to which plaintiff may be entitled.

Dated: August 18, 2020                Respectfully Submitted,

                                            */s/ James A. Clifford*
                                            James A. Clifford
                                            */s/ Andrew P. Cotter*
                                            Andrew P. Cotter
                                            CLIFFORD & CLIFFORD, LLC
                                            62 Portland Rd., Suite 37
                                            Kennebunk, ME 04101
                                            (207) 985-3200